UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

                 Petitioner,

           - against –

SEAN PETER, a/k/a "Huggie,"

                 Respondent.

------------------------------X

**MEMORANDUM AND ORDER**
17 CR 054-1
22 CIV 8945(NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Following a jury trial, defendant Sean Peter ("Peter") was convicted -- along with his co-defendants Jason Campbell ("Campbell"), and Steven Syder ("Syder") -- of all three counts in a January 2017 indictment: (1) conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(D); (2) murder through the use of a firearm during and in relation to a narcotics conspiracy, in violation of 18 U.S.C. § 924(j); and (3) possession of a firearm that was discharged during and in relation to a narcotics conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). See United States v. Peter, No. 17-cr-054 (NRB), 2019 WL 2918226 (S.D.N.Y. July 8, 2019) at *1, aff'd sub nom. United States v. Campbell, 850 F. App'x 102 (2d Cir. 2021) ("Peter I"). Before the Court is Peter's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, in which he argues that his

three attorneys[1] were ineffective for: failing to bring a pretrial motion to exclude eyewitness testimony from an immunized witness, Julian Martinez ("Martinez"), who testified at trial for the Government; failing to call an expert witness to explain the unreliability of eyewitness testimony; and failing to object to Martinez's testimony at trial.  ECF No. 196 (the "Petition" or "Pet.");[2] Dkt. 22-cv-8945, ECF No. 2 ("Pet. Br.") at 2-7.   For the reasons stated herein, the Petition is denied.

## BACKGROUND

The Court presumes familiarity with the facts of this case, which have been thoroughly recounted in prior opinions.  See Peter I; Campbell, 850 F. App'x 102; United States v. Peter, No. 17-cr-54-01 (NRB), 2022 WL 2657127 (S.D.N.Y. July 7, 2022) ("Peter II").

For purposes of this Memorandum and Order, and in brief, defendants were convicted of the above-referenced crimes resulting from their October 2, 2012 murder of Brian Gray in furtherance of a narcotics conspiracy.   Peter II, 2022 WL 2657127, at *1.   At

---

[1] Bobbi C. Sternheim was initially appointed to represent Peter pursuant to the Criminal Justice Act.  See ECF No. 8.  The Court then appointed Russell T. Neufeld as "learned counsel" for Peter while the Government decided whether to seek the death penalty.  Although the Government chose not to seek the death penalty, see ECF No. 49, the Court permitted both initial counsel and learned counsel to continue their representation of Peter throughout the remainder of the action, including during trial.  An additional lawyer, Alex Huot, entered an appearance as an associate counsel for Peter prior to trial.  See ECF No. 81.

[2] Unless otherwise specified, all citations are to Dkt. 17-cr-54-01.

trial, the Government presented evidence that the defendants murdered Gray approximately two weeks after Gray and Martinez attempted to rob a "stash house" at which Peter's brother, Shane Peter (a/k/a "Streets") stored marijuana (the "Stash House"). Id.; see also Transcript of December 2018 Trial ("Tr.") at 515–16, 526, 530; Peter I, 2019 WL 2918226, at *11. Among other things, Martinez testified to the following about the attempted robbery:

Gray and Martinez obtained guns and traveled to the Stash House around 2:00 AM. Tr. at 515–18. They planned to enter the Stash House separately, at which point one of the two would locate and watch Streets while the other would search the Stash House for marijuana and money. Id. at 516. However, near the Stash House, Gray noticed a vehicle behind him and Martinez, and thinking they were being followed by police, threw his gun under a car. Id. at 524.

Martinez then observed the car in question, a black Lincoln (the "Lincoln"), approach Gray. Id. at 523.[3] The driver of the Lincoln lowered his window, and Martinez heard the driver scream: "Do y'all think I don't know what the fuck y'all doing? If you think you're going to rob my brother, you got another thing coming

---

[3] Martinez was standing across the street from Gray at the time. Id.

to you." Id. at 526.  Gray replied that he did not know what the driver was talking about, and the Lincoln sped off.  Id.

Gray told Martinez that they should leave, but Martinez wanted to retrieve Gray's gun.  Id. at 526–27.  As Martinez approached the location where Gray discarded his gun, the Lincoln returned, and this time it pulled up next to Martinez, with Martinez located next to the driver's side.  Id. at 527-28, 530.  The driver lowered his window and said, "Did you just hear what I said to your man? If you think you're going to rob my brother, you got another thing coming."  Id. at 530.  The driver was moving as he spoke to Martinez, and Martinez believed that he was reaching for a weapon. Id. at 530-31.  Martinez thus pulled out his gun and tried to shoot the driver, but the gun malfunctioned.  Id. at 531.  The driver fled in the Lincoln, and Gray and Martinez left the area.  Id. at 534, 547.

Martinez testified that he had a clear view of the driver's face on the night of the attempted robbery, and at trial identified him as Sean Peter.  Id. at 535, 547.  Defense counsel objected to Martinez's identification of Peter at a sidebar on the ground that Martinez did not know Peter's name at the time of his attempted robbery.  Id. at 536–37.  Relatedly, counsel challenged Martinez's pretrial photographic identification of Peter at sidebar.  Id. at

536-45.[4]  When questioning resumed, the Government asked Martinez
to clarify that he did not know the driver's name when he first
saw him, which Martinez did.  Id. at 546.

Approximately two weeks after the attempted robbery,
defendants tracked down and murdered Gray, their participation in
which was demonstrated at trial through eyewitness testimony and
by surveillance video.  Peter I, 2019 WL 2918226, at *11-*12.
Following the murder, defendants were driven to a hospital in New
Jersey, where they gave coordinated false exculpatory statements.
Id. at *12.  Law enforcement recovered a black duffle bag from the
van that transported the defendants to the hospital, which
contained, inter alia, more than a pound of marijuana, a digital
scale, hundreds of Ziploc baggies, $3,674.00 in cash, three
different kinds of ammunition (including spent shell casings)
matching the types found at the scene of the fatal shooting of
Brian Gray, and a cellphone belonging to one of the other shooting
victims from the scene.  Id. at *3.

Defendants were subsequently arrested and convicted after a
jury trial.  Peter II, 2022 WL 2657127, at *2; ECF No. 167.
Following their convictions, defendants moved pursuant to Fed. R.

---

[4] Martinez was shown a photo array of 18 photographs during the Government's
investigation and indicated that Peter was the driver of the Lincoln.  Id. at
536, 539.

Crim. P. 29 to set aside the verdict and pursuant to Fed. R. Crim. P. 33 for a new trial.  ECF Nos. 111, 117.  Those motions were denied by this Court in a lengthy opinion, Peter I, 2019 WL 2918226, which was affirmed by the Second Circuit, Campbell, 850 F. App'x 102.  The defendants' subsequent petition for rehearing en banc was denied on July 13, 2021, and the Circuit's mandate was filed on this Court's docket on July 26, 2021.  ECF No. 181.

On August 13, 2021, defendants, pro se, submitted a second motion for a new trial based on purported "new evidence" in the form of an affidavit from Streets.  ECF No. 182.  We also denied that motion, see Peter II, 2022 WL 2657127, at *5, and Peter's appeal therefrom was dismissed.  Dkt. 22-1675 (2d Cir.).[5]

On August 15, 2022, Peter filed a letter requesting an extension of time to file a petition under 28 U.S.C. § 2255, ECF No. 194, which we denied on August 26, 2022 because his "request did not set forth allegations in support of a claim for relief under section 2255," ECF No. 195.  Peter thereafter filed the instant pro se motion to vacate his sentence, which was received by the Court on October 19, 2022 but contained a certificate of service dated October 11, 2022.  ECF No. 196; Pet. Br.  As noted

---

[5] Peter's appeal was dismissed for failure to properly file his brief by the Circuit's February 27, 2023 deadline.  The Circuit's mandate dismissing the appeal was filed on this docket on March 31, 2023.  ECF No. 207.  Peter is currently attempting to cure those defects.  See Dkt. 22-1675.

above, Peter argues that his three lawyers were ineffective because they failed to: bring a pretrial motion to exclude eyewitness testimony from Martinez; object to Martinez's testimony at trial; and call an expert witness to explain the unreliability of eyewitness testimony.  Id.  The Government filed an opposition on December 20, 2022, contending that the Petition is untimely, and, in any event, fails on the merits.  ECF No. 200 ("Gov't Opp.").  Peter submitted a reply brief on February 27, 2023.  ECF No. 202 ("Pet. Reply").

## LEGAL STANDARD

In order to prove a claim of ineffective assistance of counsel, a party must both show that (1) "counsel's representation fell below an objective standard of reasonableness," and that (2) counsel's "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687–88 (1984).  "The performance inquiry must be whether counsel's assistance was reasonable considering all circumstances."  Id. at 688.  In reviewing counsel's performance, judicial "scrutiny . . . must be highly deferential," id. at 689, and a defendant seeking to overturn a conviction on the ground of ineffective assistance of counsel "bears a heavy burden."  United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004).  Indeed, the question under Strickland is "whether an attorney's representation amounted to incompetence

under prevailing professional norms, not whether it deviated from best practices or most common custom." <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011) (internal quotation marks omitted).

Moreover, it is axiomatic that "a court reviewing a claim for ineffective assistance of counsel is not permitted to 'use hindsight to second guess [counsel's] strategy choices.'" <u>Baran v. United States</u>, 160 F. Supp. 3d 591, 596 (S.D.N.Y. 2016) (quoting <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994)). "[T]o the extent an attorney's strategic decisions and trial tactics are reasonably informed under the circumstances, the petitioner cannot, with the benefit of hindsight, second-guess these decisions posttrial to present a colorable claim of ineffective assistance of counsel." <u>Rodriguez v. United States</u>, No. 09-cr-58 (NRB), 2013 WL 3388223, at *3 (S.D.N.Y. July 8, 2013).[6]

## DISCUSSION

We begin by finding that Peter's petition was filed before the one-year statute of limitations set forth in 28 U.S.C. § 2255(f)(1) expired. The Government's argument that Peter should have filed the Petition by July of 2022, Gov't Opp. at 7-9, is not

---

[6] We are to construe the submissions and arguments of <u>pro se</u> habeas petitioners like Peter to "raise the strongest arguments that they suggest." <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted). Proceeding <u>pro se</u>, however, does not relieve the petitioner of the burden of proving his § 2255 claims by a preponderance of the evidence. <u>Francis v. United States</u>, Nos. 14-cv-2311 (NRB), 06-cr-0080 (NRB), 2016 WL 2865422, at *3 (S.D.N.Y. May 13, 2016).

well-grounded.  Under the "prison mailbox" rule, a pro se prisoner satisfies the time limit for filing a habeas petition if he delivers the notice of such petition to prison officials within the requisite time limitation, see Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001); Mingo v. United States, 360 F. Supp. 2d 591, 593 (S.D.N.Y. 2005), and the date of petitioner's certificate of service is sufficient to satisfy the mailbox rule, see Beras v. United States, No. 05-cv-2678 (SAS), 2013 WL 1155415, at *4 n.31 (S.D.N.Y. Mar. 20, 2013) (citing Moshier v. United States, 402 F.3d 116, 117 (2d Cir. 2005)).  Here, Peter's certificate of service was dated October 11, 2022, which is the date on which his one-year limitation expired under § 2255(f)(1).[7]

Regardless, as detailed below, Peter cannot meet his burden to establish either of the two Strickland prongs.

---

[7] Contrary to the Government's position, when a defendant in a federal prosecution takes an unsuccessful direct appeal from a judgment of conviction, but does not petition for a writ of certiorari, the judgment becomes "final" for postconviction relief purposes on the date when the time for filing a petition for certiorari expires, not when the appellate court issues its mandate affirming the conviction.  See Clay v. United States, 537 U.S. 522, 524-25, 532 (2003).  And "[a] petition for certiorari must be brought within 90 days . . . from the denial of a motion for rehearing en banc if such a motion is made." United States v. Jean, No. 13-cr-280 (DC), 2018 WL 4771530, at *2 (S.D.N.Y. Oct. 3, 2018); see Sup. Ct. Rule 13(1) (petition for certiorari due 90 days after entry of the Court of Appeals' judgment); Sup. Ct. Rule 13(3) ("The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate . . . .").

### I.   Defense Counsel's Performance Never Fell Below an Objective Standard of Reasonableness

Peter is unable to meet the first <u>Strickland</u> prong because counsel's performance was reasonable.   Central to our determination is his attorneys' strategic decision to argue, in part, that defendants did not murder Gray in furtherance of a marijuana conspiracy, but rather, the murder was personal and retaliatory in nature after Gray and Martinez attempted to rob the Stash House.

As discussed in <u>Peter I</u>, the Government had sufficient evidence to show that Peter was an active participant in the charged marijuana conspiracy, including, <u>inter alia</u>, evidence that Peter personally made marijuana sales and facilitated marijuana transactions.   <u>See</u> <u>Peter I</u>, 2019 WL 2918226, at *13.   Likewise, the Government presented overwhelming evidence that Peter participated in Gray's murder.   <u>See</u> <u>Campbell</u>, 850 F. App'x 102 at 104.[8]

---

[8] As the Circuit noted in <u>Campbell</u>:

> [T]he jury heard eyewitness testimony and observed video surveillance footage from which it could conclude that—after Syder had identified Gray at a local deli—Peter, along with Campbell and Syder, gathered handguns from trashcans near Peter's apartment, followed Gray and his friends to a nearby block where they were hanging out and drinking beer, and each opened fire on them, killing Gray and injuring two others.   The evidence also established that Peter was shot in the arm, and that, after the shooting, all three appellants returned to Peter's apartment.

<u>Id.</u>

However, to convict the defendants on Count II of the indictment, it was necessary for the Government to prove that Gray's death occurred in the course of the marijuana conspiracy charged in Count I.  See 18 U.S.C. § 924(j).  As part of their trial strategy, defense counsel endeavored to present an alternative narrative to the jury –– i.e., that Gray's murder was personal and he was killed in retaliation for Martinez's attempt on his life, at which Gray was present.  Martinez's testimony detailing the night of the attempted robbery was necessary to advance counsel's strategy, because Martinez could establish that he attempted to shoot Peter while accompanied by Gray at the Stash House.[9]

Eliminating Martinez's identification of Peter would, at a minimum, have significantly damaged the proposed alternative motive for Gray's killing.  Consequently, filing a pretrial motion to exclude Martinez's eyewitness testimony, or calling an expert witness to testify as to the unreliability of eyewitness testimony,

---

[9] Counsel's approach was evident from Mr. Neufeld's opening statement, see Tr. at 50-51 ("Martinez picks up his gun, aims it at Sean Peter and tries to shoot and kill Sean Peter, but the gun jams. . . . Sean Peter ducks down to avoid being hit, and speeds off in his car."); Tr. 51 ("This was not about a marijuana conspiracy.  This was personal.  They had tried to kill him."), and continued throughout trial, see Tr. at 830 ("There is no doubt that Gray and Martinez conspired to commit armed robbery . . . [and] attempted the murder of Sean Peter[.]").

would have been counterproductive to counsel's effort to avoid Peter's conviction on Count II.[10]

Although, for reasons this Court has previously articulated, there was sufficient evidence to refute counsel's "personal motivation" theory, see Peter I, 2019 WL 2918226, at *15-*16, that does not mean that advancing such a narrative was constitutionally ineffective.  "It is not in the trial court's power to second-guess trial counsel's defense strategy simply because the chosen strategy has failed," and "[p]erceptive Monday morning quarterbacking . . . does not trump well-reasoned, on-the-scene decision-making."  DiMattina v. United States, 949 F. Supp. 2d 387, 414 (E.D.N.Y. 2013) (internal quotation marks omitted); see also United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987) ("We will not second-guess trial counsel's defense strategy simply because the chosen strategy has failed.").  Given the high bar to show unreasonableness, the argument that counsel's strategic decisions were constitutionally deficient is itself highly deficient.

---

[10] In any event, there is no indication that those steps would have successfully prevented the jury from concluding that Peter was the driver of the Lincoln. Had defense counsel filed a motion to exclude Martinez's identification of Peter or called an expert witness to testify regarding the unreliability of eyewitness testimony, Martinez would still have been able to testify at trial to the statements made by the driver, which independently corroborated Sean Peter's identity.  See Tr. at 530 ("Did you just hear what I said to your man?  If you think you're going to rob my brother, you got another thing coming.") (emphasis added).

For these same reasons, petitioner's reliance on <u>United States v. Nolan</u>, 956 F.3d 71 (2d Cir. 2020), fails.  There, the Circuit held that defense counsel's performance was unreasonable when counsel abandoned defendant's pretrial motion to exclude eyewitness testimony of four victims in favor of trying to impeach those witnesses at trial.  The Court noted that the circumstances presented there were "unusual," and found it significant that defense counsel based its strategy on a theory of mistaken identity and the Government's case was heavily reliant on the identifications made by its witnesses.  <u>Id.</u> at 78, 81–82.  Unlike <u>Nolan</u>, Peter's defense was not based on a theory of mistaken identity, but rather was, in part, reliant on Martinez's identification of Peter.  In addition, the Government's case against Peter, in contrast to <u>Nolan</u>, would not "have been effectively over in light of the [its] heavy reliance on the eyewitness identification[]" if Martinez was precluded from identifying Peter at trial.  <u>See</u> <u>id.</u> at 81.  Rather, as the Second Circuit wrote in <u>Campbell</u>, "there was testimony from <u>several</u> witnesses and other corroborating evidence from which the jury could rationally infer [Peter] was an active participant in Streets's marijuana conspiracy," and "the government presented <u>extensive</u> evidence concerning Peter's involvement, along with his

-13-

co-appellants, in Gray's murder on October 2, 2012." <u>Campbell</u>, 850 F. App'x at 104 (emphasis added).

Last, to the extent that Peter claims his counsel was ineffective for "fail[ing] to challenge Martinez [sic] eyewitness testimony" at trial, Pet. Br. at 5, that allegation is unfounded. Despite conceding Martinez's identification of Peter, counsel nonetheless: (1) objected before Martinez was shown a photo of Peter; (2) at sidebar called the photo array Martinez was shown "very suggestive"; and (3) argued that Martinez could not credibly identify Peter when he first saw Peter in the Lincoln.  Tr. at 536–45.  The Government then clarified with Martinez in open court that he did not know Peter's name on the night of the attempted robbery and only identified Peter in a photo array after the fact. Tr. at 546–47.  Martinez was also thoroughly impeached during defense counsel's cross:

> [i]n full view of the jury, Martinez: (1) acknowledged his attempts to rob Peter's brother and to shoot Peter for stopping him; (2) was rude and dismissive when spoken to by both counsel and the Court; (3) taunted and insulted Peter directly through the use of an expletive; and (4) had several of his prior bad acts laid bare. What more Peter could have asked for is unclear.

<u>Peter I</u>, 2019 WL 2918226, at *8.  Thus, as the Government notes, counsel "fully explored" Martinez's credibility at trial.  <u>See</u> Gov't Opp. at 14.

-14-

Accordingly, Peter does not meet the first <u>Strickland</u> prong,
and the Petition is dismissed on that ground alone.  <u>See</u> <u>United</u>
<u>States v. Best</u>, 219 F.3d 192, 201 (2d Cir. 2000) (petitioner must
establish both <u>Strickland</u> prongs to establish ineffective
assistance).  However, for the sake of completion, we briefly note
that Peter fares no better on the second prong.

## II.   Peter Does Not Meet His Burden to Establish Prejudice

Even assuming that the purported errors identified by Peter
were constitutionally unreasonable, which they were not, Peter has
failed to demonstrate that he suffered any prejudice as a result.
The remaining evidence against Peter was sufficient to establish
Peter's guilt on all three counts.  As the Government writes in
its opposition, such evidence included:

> video surveillance from the night of the murder; the
> testimony of Larice Robinson, an immunized witness who
> had purchased marijuana from Peter and Streets; evidence
> of Peter's injury from the shooting; and evidence of the
> flight of Peter and his co-defendants after the murder
> from Peter's apartment to Teaneck, New Jersey, including
> the black duffle bag that law enforcement recovered from
> the defendants containing ballistics evidence,
> marijuana, cash, and multiple cellphones.

Gov't Opp. at 12 (citing <u>Campbell</u>, 850 F. App'x at 104–05, 107).
Accordingly, petitioner cannot meet his burden of showing a
"reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."
Strickland, 466 U.S. at 694.

## CONCLUSION

For the foregoing reasons, Peter's motion is denied.[11]  The
Clerk of Court is respectfully directed to terminate the pending
motions at Dkt. 17-cr-54-01, ECF No. 196 and Dkt. 22-cv-8945, ECF
No. 1, and close the case at Dkt. 22-cv-8945.  Further, as Peter
has failed to make a substantial showing of the denial of a
constitutional right, the Court will not issue a certificate of
appealability.  28 U.S.C. § 2253.  It is hereby certified that an
appeal from this Memorandum and Order would not be taken in "good
faith" within the meaning of 28 U.S.C. § 1915(a)(3).  See Coppedge
v. United States, 369 U.S. 438, 444-45 (1962).


   SO ORDERED.


Dated:    New York, New York
          June 16, 2023

                                     _____
                                     NAOMI REICE BUCHWALD
                                     UNITED STATES DISTRICT JUDGE

---

[11] The existing record is conclusive that Peter is not entitled to relief on any
theory presented to this Court, and accordingly, the Court denies the Petition
without holding an evidentiary hearing.  See 28 U.S.C. § 2255(b) (the Court
need not hold an evidentiary hearing on a habeas petition if "the motion and
the files and records of the case conclusively show that the prisoner is entitled
to no relief").